IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

VERITEXT/PA REPORTING
COMPANY, L.L.C., t/a RSA        :
         :
         :
      Plaintiff     :
         :
   v.         :
         :
E-REPORTING STENOGRAPHIC AFFILIATES :      Civil Action No. _____
OF PENNSYLVANIA, INC. t/a E-RSA   :
F. DAVID DAMIANI       :
LAURA GROSSO        :
CARMELLA MAZZA      :
RICHARD J. COLEMAN     :
         :
      Defendants    :

## COMPLAINT

Plaintiff Veritext/PA Reporting Company, L.L.C., t/a RSA hereby files this

Complaint against defendants E-Reporting Stenographic Affiliates of Pennsylvania, Inc. t/a E-

RSA, F. David Damiani, Laura Grosso, Carmella Mazza and Richard J. Coleman, and in support

hereof, avers as follows:

### THE PARTIES

1.    Plaintiff Veritext/PA Reporting Company, L.L.C., formerly Veritext/PA

RSA, L.L.C., t/a RSA ("RSA") is a Delaware limited liability corporation with a principal place

of business at 1845 Walnut Street, 15th Floor, Philadelphia, PA 19103.  RSA provides

stenographic, court reporting and related litigation services in Pennsylvania, New Jersey and

Delaware.

2.    Defendant E-Reporting Stenographic Affiliates of Pennsylvania, Inc. t/a

E-RSA ("E-RSA") is a recently formed Pennsylvania corporation with a principal place of

business at 30 South 17th Street, Philadelphia, PA 19103. E-RSA provides stenographic, court

reporting and related litigation services in the same geographic market as RSA.

3.      Defendant F. David Damiani is an individual residing at 59 Colonial

Avenue, Norristown, PA 19403.

4.      Defendant Laura Grosso is an individual residing at 15 W. Coulter

Avenue, Collingswood, NJ 08108.

5.      Defendant Carmella Mazza is an individual residing at 3 Georgian Drive,

Cinnaminson, NJ 08077.

6.      Defendant Richard J. Coleman is an individual residing at 225 W.

Rittenhouse Square, Room #411, Philadelphia, PA 19103.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over the subject matter under 15 U.S.C. §1125

and 28 U.S.C. §§1331 and 1338. This Court has supplemental jurisdiction of state claims under

28 U.S.C. §1367.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) as a

substantial part of the events giving rise to the claims occurred in the Eastern District of

Pennsylvania.

## PLAINTIFF AND ITS RSA MARK

9.      On or about April 17, 1998, Plaintiff acquired all of the assets of

Reporting Service Associates, Inc., including the goodwill of Reporting Service Associates, Inc.

and the tradename and service mark RSA and its accompanying good will.

10.     Since that time, Plaintiff has operated a high quality stenographic

reporting agency and has continued to operate and trade under the tradename and service mark

RSA and developed a reputation for high quality stenographic reporting, deposition transcripts and related litigation services in Pennsylvania, New Jersey and Delaware markets.

11.     Over the years, Plaintiff has expended considerable efforts and resources in advertising and promoting its services under the tradename and service mark RSA.  Plaintiff has generated approximately $3.8 million per year in revenue in the greater Philadelphia and Delaware Valley marketplace through its services under the tradename and service mark RSA.

12.     As a result of Plaintiff's investment, use and promotion, the tradename and service mark RSA has acquired tremendous reputation, success and goodwill, such that the services offered under the RSA tradename and service mark have become widely and favorably recognized in the legal community as emanating from a single source in the markets in which RSA does business.

13.     The RSA tradename and service mark is inherently distinctive.  It has acquired such distinctiveness as a result of Plaintiff's extensive investment and promotional efforts.  Plaintiff's use of the RSA tradename and service mark is recognized as distinguishing its products and services from others in the court reporting industry in the markets in which RSA does business.

14.     The RSA tradename and service mark and the goodwill associated therewith are valuable assets of Plaintiff.

## DEFENDANTS' RELATIONSHIP WITH RSA

15.     From 1998 until October 14, 2003, defendant Laura Grosso ("Grosso") was employed by RSA as the Office Manager.

16.     By virtue of her position at RSA, Grosso was responsible for calendaring deposition and related litigation services with RSA customers, assigning such services to court

-3-

reporters, retaining and managing RSA's court reporters on behalf of RSA. Grosso further had responsibility for supervising RSA's office staff.

17.    Grosso's responsibilities also included keeping and distributing, on behalf of RSA, tickets to Philadelphia Flyers home hockey games for client entertainment and business development efforts to referral sources including RSA's current clients. She had direct access to RSA's clients, and was privy to RSA's client list, marketing efforts, pricing and methods of operation.

18.    From 1998 until October 14, 2003, defendant Carmella Mazza ("Mazza") was employed by RSA as the Billing Associate.

19.    By virtue of her position at RSA, Mazza was responsible for billing for RSA's services and calculation of payments to court reporters. Mazza had direct access to RSA's clients, and was privy to RSA's client list, marketing efforts, pricing and methods of operation.

20.    From 1998 until October 2003, defendant F. David Damiani ("Damiani") was retained by RSA as a court reporter.

21.    By virtue of his relationship with RSA, Damiani performed stenographic services for RSA's customers and held himself out as being exclusively associated with RSA. At times, Damiani exercised control over the calendaring of stenographic services and the management of court reporters for which RSA compensated Damiani at a premium rate.

22.    Damiani, by virtue of his relationship with RSA, had direct access to RSA's clients and was privy to RSA's client list, marketing efforts, pricing and methods of operation.

GV: #265348 v5 (5_qs05!.DOC)

23.     From July 2002 until October 14, 2003, defendant Richard J. Coleman ("Coleman") was employed by RSA as a salesman of RSA's services.

24.     By virtue of his relationships with RSA, Coleman performed sales and client services for RSA's clients, had direct access to RSA's clients, and was privy to RSA's client list, marketing efforts, pricing and methods of operation.

## DEFENDANTS' RESIGNATION AND THE CREATION OF E-RSA

25.     As of October 10, 2003, Grosso, Mazza and Coleman were employed at RSA.

26.     In or about the beginning of October 2003, Damiani performed services for RSA as a court reporter.

27.     While employed by and retained by RSA, defendants Grosso, Mazza, Damiani and Coleman made arrangements to form a competing stenographic reporting agency.

28.     Defendants Grosso, Damiani, and Coleman conspired in their formation of a competing stenographic reporting agency named E-Reporting Stenographic Affiliates of Pennsylvania, Inc. that trades as E-RSA.

29.     The name E-RSA is substantially similar to RSA and is intended to cause confusion in the marketplace and to inappropriately capitalize upon the goodwill and reputation of the RSA name.

30.     The name E-RSA has caused confusion in the marketplace among RSA's clients, including, without limitation, customers appearing at RSA's offices for depositions mistakenly contracted with E-RSA, and questions regarding the proper entity billing for services.

31.     On October 9, 2003, E-RSA entered into a sublease agreement for office space in Philadelphia, Pennsylvania.

GV: #265348 v5 (5_qs05!.DOC)

32.    On October 10, 2003, defendant E-RSA filed articles of incorporation with the Commonwealth of Pennsylvania.

33.    On Tuesday, October 14, 2003, Grosso and Mazza elected to resign their employment with RSA immediately and without prior notice to RSA, by notifying RSA by telephone.

34.    Coleman also resigned from RSA the same day, October 14, 2003, without prior notice to RSA, in order to join E-RSA.

35.    Following the abrupt resignation and departure of Grosso and Mazza, RSA discovered that both Grosso and Mazza previously planned their exit from RSA and had removed property from their offices at RSA prior to October 14, 2003.

36.    Among the items removed by Grosso and/or Mazza, were RSA's season tickets to the Philadelphia Flyers games that were purchased by RSA, a tape dubbing (copying) machine, a Rolodex that contained RSA's customer contact information, and legal resource supplies.

37.    Upon information and belief, defendants Grosso, Mazza and/or Coleman, while employed by RSA, diverted or attempted to divert clients from using the services of and doing business with RSA and promoted, marketed or diverted RSA's clients towards using the services of and doing business with E-RSA.

38.    Upon information and belief, Damiani, individually and jointly with Grosso, Mazza and/or Coleman diverted or attempted to divert RSA's clients, through unlawful and unfair competitive practices, from using the services of, and doing business with, RSA and promoted, marketed or diverted RSA's clients towards using the services of, and doing business with, E-RSA.

-6-

39.    Defendants through advertising and/or promotion through personal communications intentionally misinformed RSA clients that RSA was in the process of going out of business, that RSA was closing its doors, that RSA had no court reporters, and that all of RSA's employees had left RSA.

### COUNT I — FALSE DESIGNATION OF ORIGIN
### LANHAM ACT § 43(a) – 15 U.S.C. § 1125(a)
### (AGAINST ALL DEFENDANTS)

40.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 39 of the Complaint as if set forth at length herein.

41.    At all times relevant to this lawsuit, Plaintiff has provided services in interstate commerce using its tradename and service mark RSA.

42.    Defendants' formation of E-RSA and their marketing of E-RSA to RSA's customers constitutes a false designation of origin in that it is deceptive and confuses the public as to whether RSA is still in business, and whether E-RSA is merely the continuation of or otherwise affiliated with RSA.

43.    Defendants' false designation occurred in interstate commerce in connection with the services of E-RSA.

44.    Defendants' false designation of origin is likely to cause confusion, mistake or deception as to the origin, sponsorship or approval of E-RSA's services.

45.    As a result of Defendants' actions, RSA has lost and will lose in the future revenue of an unknown amount due to the erroneous belief that E-RSA's services and business operation is a part of, sponsored by, or affiliated with RSA, as well as damage to its reputation and goodwill.  Damages attributable to Defendants' actions are in excess of $150,000.00.

GV: #265348 v5 (5_qs05!.DOC)

## COUNT II — FALSE ADVERTISING OR PROMOTION
## LANHAM ACT § 43(a) – 15 U.S.C. § 1125(a)
## (AGAINST ALL DEFENDANTS)

46.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 45 of the Complaint as if set forth at length herein.

47.    Defendants have made false and misleading statements regarding RSA's services by stating, among other things, that RSA is out of business, or about to go out of business; that all of RSA's employees and court reporters have left RSA to work for E-RSA, and that RSA is unable to service its clients.

48.    Defendants' statements were made in connection with its advertising or promotion of E-RSA and there has been actual deception and a tendency to deceive a substantial portion of the intended audience which consisted of current and/or former RSA clients.

49.    Defendants' false and misleading statements were material in that they were intended to and likely influenced the purchasing decisions of the intended audience which consisted of current and/or former RSA clients.

50.    Defendants' false and misleading advertising and promotional statements were made in or traveled in interstate commerce.

51.    As a result of Defendants' false and misleading statements, there is a likelihood of injury to Plaintiff in terms of loss of goodwill and declining revenue.  Damages attributable to Defendants' actions are in excess of $150,000.00.

## COUNT III — COMMON LAW TRADE MARK INFRINGEMENT
## (AGAINST ALL DEFENDANTS)

52.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 51 of the Complaint as if set forth at length herein.

GV: #265348 v5 (5_qs05!.DOC)

53.     At all times relevant to this lawsuit, Plaintiff has provided services in intrastate commerce using its tradename RSA.

54.     Defendants' formation of E-RSA and their marketing of E-RSA to RSA's customers deceptively confuses the public as to whether RSA is still in business, and whether E-RSA is merely the continuation of or otherwise affiliated with RSA, all in violation of the common law of Pennsylvania.

55.     As a result of Defendants' actions, RSA has lost and will lose in the future revenue of an unknown amount, as well as damages to its reputation and goodwill, due to the erroneous belief that E-RSA's services and business operation are a part of, sponsored by, or affiliated with RSA.  Damages attributable to Defendants' actions are in excess of $150,000.00.

## COUNT IV — UNFAIR COMPETITION
## (AGAINST ALL DEFENDANTS)

56.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 55 of the Complaint as if set forth at length herein.

57.     At all times relevant to this lawsuit, Plaintiff has provided services using its tradename, RSA.

58.     Defendants' use of E-RSA and their statements to RSA's clients deceptively confuses the public as to whether RSA is still in business, and whether E-RSA is merely the continuation of or otherwise affiliated with RSA.

59.     As a result of Defendants' actions, Plaintiff has lost, and will lose in the future, sales of an unknown amount due to the erroneous belief of RSA's clients that E-RSA's services and business operation are a part of, sponsored by, or affiliated with RSA.

60.     As a result of Defendants' actions, Plaintiff has lost, and will lose in the future, sales of an unknown amount, as well as damage to its reputation and goodwill, due to the

erroneous belief of RSA's clients that RSA is or intends to go out of business, close its doors, or lost all of its court reporters or employees. Damages attributable to Defendants' actions are in excess of $150,000.00.

## COUNT V — BREACH OF DUTY OF LOYALTY (AGAINST GROSSO, MAZZA AND COLEMAN)

61.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 60 of the Complaint as if set forth at length herein.

62.     During her employment with RSA, Grosso had the responsibility, among other things, to coordinate stenographic reporting assignments and to distribute RSA's client entertainment tickets to RSA's clients, and to recruit and maintain court reporters to work on behalf of RSA.

63.     During his employment with RSA, Coleman had the responsibility, among other things, to exclusively sell and promote the services of RSA.

64.     During her employment with RSA, Mazza had the responsibility for, among other things, coordinating RSA's billing information.

65.     While employed by RSA, Defendants Grosso, Coleman and Mazza worked on the preparation and formation of E-RSA and diverted work to E-RSA that would have otherwise gone to RSA. Moreover, Defendants Grosso, Coleman and/or Mazza failed to perform assigned work by RSA in an effort to divert work and revenue from RSA to E-RSA.

66.     During their employment with RSA, Grosso, Coleman and Mazza had a duty of loyalty to act in the company's best interest and not to divert corporate opportunities away from RSA.

67.     By purposely foregoing the opportunity to schedule work for RSA until after their resignation, transferring, diverting and/or failing to perform assigned work, and by

starting E-RSA, Grosso, Coleman and Mazza breached their duty of loyalty by diverting corporate opportunities away from RSA.

68.    As a result of the actions and/or omissions of Grosso, Coleman and Mazza, RSA has lost revenue and suffered damage to its reputation and goodwill in an amount to be determined.  Damages attributable to Defendants' actions are in excess of $150,000.00.

## COUNT VI — TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL RELATIONS (AGAINST ALL DEFENDANTS)

69.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 68 of the Complaint as if set forth at length herein.

70.    At all relevant times herein, RSA had contractual relations with clients who had scheduled stenographic reporting services with RSA prior to Defendants' resignation and departure from RSA.

71.    Defendants intended to harm RSA by wrongfully and improperly interfering with these contractual relations by, among other things, avoiding scheduling those jobs on behalf of RSA, misleading RSA's clients as to the ability of RSA to carry out its services, and/or transferring RSA's stenographic reporting jobs to E-RSA.

72.    Defendants purposely interfered with RSA's contractual client relationships in order to unlawfully benefit E-RSA.

73.    In furtherance of Defendants' efforts to interfere with RSA's contractual relationships, Defendants purposely interfered with RSA's relationships with RSA's employees and its court reporters.

74.    Defendants were neither privileged nor justified in their interference with RSA's contractual relationships.

GV: #265348 v5 (5_qs05!.DOC)

75.     Defendants' conduct caused damage to RSA, including, but not limited to lost revenue and damage to RSA's goodwill and reputation.  Damages attributable to Defendants' actions are in excess of $150,000.00.

## COUNT VII — TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL RELATIONS (AGAINST ALL DEFENDANTS)

76.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 75 of the Complaint as if set forth at length herein.

77.     At all relevant times herein, RSA had prospective contractual relations with clients who had or intended to schedule court reporting services with RSA.  Many attorneys, legal assistants, law firms and insurance companies, among others, have a long history of loyalty and repeat business with RSA.

78.     Defendants wrongfully and improperly interfered with these prospective contractual relations by, among other things, avoiding scheduling those jobs on behalf of RSA, misleading RSA's clients as to the ability of RSA to carry out its services, and/or transferring RSA's stenographic reporting jobs to E-RSA.

79.     Defendants purposely interfered with RSA's prospective client relationships in order to unlawfully benefit E-RSA.

80.     Defendants were neither privileged nor justified in their interference with RSA's contractual relationships.

81.     In furtherance of Defendants' efforts to interfere with RSA's prospective contractual relationships, Defendants purposely interfered with RSA's relationships with RSA's employees and its court reporters.

82.    Defendants' conduct caused damage to RSA, including, but not limited to lost revenue and damage to RSA's goodwill and reputation.  Damages attributable to Defendants' actions are in excess of $150,000.00.

## COUNT VIII — CONVERSION
## (AGAINST GROSSO, MAZZA, COLEMAN AND DAMIANI)

83.    Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 82 of the Complaint as if set forth at length herein.

84.    Upon information and belief, Grosso, upon her resignation, took with her property rightfully belonging RSA, including season tickets to the Philadelphia Flyers games purchased by RSA, certain client contact information and other RSA property.

85.    By doing so, Grosso unlawfully deprived RSA of its property without consent or lawful justification.

86.    RSA, through telephone calls and written correspondence to Grosso, requested the return of the converted tickets and other property.

87.    Grosso failed and refused to respond to RSA's request to return its property.

88.    Defendants Grosso, Mazza, Coleman and Damiani removed from RSA's premises, among other things, a tape dubbing machine, a Rolodex containing RSA's client contact information and other legal resource supplies.  Defendants have individually and jointly deprived RSA of its property without consent or lawful justification.

89.    As a direct and proximate result of the conversion of RSA's property, Plaintiff has been damaged.

## COUNT IX – COMMERCIAL DISPARAGEMENT
## (AGAINST ALL DEFENDANTS)

90.     Plaintiff incorporates by reference the allegations contained in paragraphs 1 through 89 of the Complaint as if set forth at length herein.

91.     Defendants' statements that, among other things, RSA is out of business, or about to go out of business; that all of RSA's employees and court reporters have left RSA to work for E-RSA, and that RSA is unable to service its clients were false.

92.     Defendants intended their publication to cause pecuniary loss or reasonably should have recognized that their publication would cause pecuniary loss to Plaintiff.

93.     As a result of Defendants' false statements regarding RSA, Plaintiff has suffered loss.

94.     Defendants knew when they made the false statements regarding RSA that those statements were in fact false, or acted in reckless disregard of whether the statements were true or false.

WHEREFORE, Plaintiff RSA respectfully prays for relief against the Defendants as follows:

A.      That E-RSA, its officers, agents, servants, employees, attorneys, parents, subsidiaries, related companies and financial investors, and all persons acting for, with, by, through or under them, and each of them, shall be preliminarily and permanently enjoined and restrained from:

1.      Using the RSA name and service mark or any confusingly similar designation, including but not limited to E-RSA, alone or in combination with other terms, as a trademark, tradename component, service mark or otherwise, to market, advertise or identify Defendants' goods and services; and

-14-

2.       Otherwise infringing or benefiting from Plaintiff's RSA mark; and

3.       Unfairly competing with Plaintiff in any manner whatsoever; and

4.       Causing a likelihood of confusion, injury to business reputation, and tarnishment of the distinctive quality of Plaintiff's RSA mark.

B.       That Defendants shall be required to deliver up and destroy all devices, computer hardware and software files, menus, hard drives, servers, diskettes and backups, literature, advertisements, packages, labels, signs, prints, and all other materials and products bearing the infringing name and mark E-RSA.

C.       That Defendants shall file with this Court and serve upon Plaintiff's counsel within thirty (30) days, after entry of a judgment, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the Court's injunction and order.

D.       That Defendants shall be required to account for and pay over to Plaintiff all actual damages sustained by Plaintiff by reason of their unlawful acts alleged herein, plus interest thereon.

E.       That Defendants shall be required to account for and pay over to Plaintiff all profits realized by Defendants by reason of their unlawful acts specified herein, and that such amounts be trebled as provided by law.

F.       That Defendants shall be required to pay Plaintiff punitive damages as permitted by law or in the discretion of this Court.

G.     That Defendants shall be required to pay Plaintiff its reasonable attorneys' fees and taxable costs and disbursements incurred in this litigation.

H.     All other relief as this Court may deem just and appropriate.

Michael S. Hino
Attorney I.D. No. 62406
Matthew J. Maguire
Attorney I.D. No. 73844
Pepper Hamilton LLP
400 Berwyn Park
899 Cassatt Road
Berwyn, PA 19312
(610) 640-7800
Attorneys for Veritext /PA Reporting
Company L.L.C. t/a RSA

Dated: December 3, 2003

-16-